UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

                                    )
                                    ) Civil Action
                                    ) No. 1:24-cv-12823-AK
IN RE AGENUS INC.                   ) Pages 1 to 20
STOCKHOLDER DERIVATIVE              )
LITIGATION,                         ) Related Actions:
                                    ) Civil Actions 24-13088,
                                    ) 25-10113, 24-12299, and 24-13083


BEFORE THE HONORABLE ANGEL KELLEY
UNITED STATES DISTRICT JUDGE


MOTION HEARING


April 14, 2025
10:06 a.m.


John J. Moakley United States Courthouse
Courtroom No. 8
One Courthouse Way
Boston, Massachusetts 02210


Linda Walsh, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210
lwalshsteno@gmail.com

APPEARANCES:

On Behalf of Michael Chen and Chelsea Royse:

    RIGRODSKY LAW, P.A.
    By: Timothy J. MacFall, Esq.
    825 East Gate Boulevard, Suite 300
    Garden City, New York 11530
    516-683-3516
    tjm@rl-legal.com

    MATORIN LAW OFFICE LLC
    By: Mitchell J. Matorin, Esq.
    18 Grove Street, Suite 5
    Wellesley, Massachusetts 02482
    781-453-0100
    mmatorin@matorinlawoffice.com

    THE BROWN LAW FIRM, P.C.
    By: Timothy Brown, Esq.
    767 Third Avenue, Suite 2501
    New York, New York 10017
    516-922-5427
    tbrown@thebrownlawfirm.net

On Behalf of Tyler Barthelemy:

    THE ROSEN LAW FIRM, P.A.
    By: Erica L. Stone, Esq.
    275 Madison Avenue, 40th Floor
    New York, New York 10016
    212-686-1060
    estone@rosenlegal.com

On Behalf of Brendan Ferraioli:

    LAW OFFICE OF MICHAEL P. UTKE, LLC
    By: Michael P. Utke, Esq.
    PO Box 360
    Pepperell, Massachusetts 01463
    617-314-6600
    mutke@utkelaw.com

    GAINEY MCKENNA & EGLESTON
    By: Gregory Michael Egleston, Esq.
    501 Fifth Avenue, 19th Floor
    New York, New York 10017
    212-983-1300
    egleston@gme-law.com

APPEARANCES (Continued):

On Behalf of all Defendants and nominal plaintiff Agenus, the company:

     ROPES & GRAY - NY
     By: Anne Conroy, Esq.
     1211 Avenue of the Americas
     New York, New York 10036
     212-596-9125
     anne.conroy@ropesgray.com

     Ropes & Gray - MA
     By: Daniel V. McCaughey, Esq.
     Prudential Tower
     800 Boylston Street
     Boston, Massachusetts 02199-3600
     617-951-7681
     daniel.mccaughey@ropesgray.com

Proceedings reported and produced
by computer-aided stenography.

P R O C E E D I N G S

THE CLERK:  All rise.

THE COURT:  Have a seat.

Oh, have a seat, have a seat.  I'm sorry if you didn't hear me say that.  Have a seat.

Give me one second.

All right.  I think I am ready now for you to call the case.

THE CLERK:  Thank you, Your Honor.

The United States District Court for the District of Massachusetts is now in session, the Honorable Angel Kelley presiding.  Today is April 14th, 2025.  Civil Actions 24-12823, In re Agenus Inc. Stockholder Derivative Litigation; 24-13083, Ferraioli v. Armen, et al.; 24-13088, Chen v. Armen, et al.; 25-10113, Barthelemy v. Armen, et al.; and 24-12299, Olsen v. Agenus Inc., et al., will now be heard before this Court.

THE COURT:  All right.  I hope you're in some sort of order so I can figure out who's who in this courtroom, a lot of cases, a lot of lawyers.  So why don't we start over here.

MR. MATORIN:  Good morning, Your Honor.  Mitchell Matorin, local counsel for the plaintiffs, Royse and Chen, in the consolidated action 12823.

THE COURT:  Thank you.

MR. MacFALL:  Good morning, Your Honor.  Timothy MacFall of Rigrodsky Law, also on behalf of plaintiffs Royse

and Chen.

MR. BROWN:  Good morning, Your Honor.  Tim Brown, also counsel for plaintiffs Royse and Chen.

THE COURT:  All right.  Thank you.

MS. STONE:  Good morning, Your Honor.  Erica Stone from the Rosen Law Firm for plaintiff Tyler Barthelemy in the action 25-CV-10113.

THE COURT:  Okay.  Erica Stone, you said?

MS. STONE:  Yes.

MR. UTKE:  Good morning, Your Honor.  Attorney Michael Utke for the plaintiff Brendan Ferraioli, local counsel.

THE COURT:  Give me one moment.  Don't continue yet.

MR. EGLESTON:  Good morning, Your Honor.  Greg Egleston from Gainey McKenna & Egleston on behalf of Mr. Ferraioli in Docket number 24-CV-13083.

THE COURT:  All right.  And have you filed an appearance?

MR. EGLESTON:  My local had filed pro hac papers for me, Your Honor.  My partner had been admitted but he couldn't make it, so I think they're pending.

THE COURT:  All right.  Let's see.

I do see it.  That's paper 14.  So let's resolve that now.  That will be allowed.

MR. EGLESTON:  Thank you, Your Honor.

THE COURT:  On behalf of defendants?

MS. McCAUGHEY:  Good morning, Your Honor.  Dan McCaughey from Ropes & Gray on behalf of the defendants in all the matters as well as the nominal plaintiff Agenus, the company.

MS. CONROY:  Good morning, Your Honor.  Anne Conroy on behalf of all of the defendants and nominal defendant Agenus as well in all the actions.

THE COURT:  All right.  There's a variety of motions, consolidations, relatedness.  I don't know if you were able to resolve any of that on your own before today and you want to report that those issues are resolved.  If not, I'll tell you what I'm thinking.  All right?  And then you can tell me why I should not do that.

So aside from that motion for pro hac, we have a couple of pending motions.  One is a motion to stay the consolidated derivative action.  It was labeled as unopposed by Agenus Inc., and I think I said paper 20.

And then on paper 22, a motion to vacate order -- cross-motion to vacate order and opposition to motion to consolidate and stay by Brendan Ferraioli.

And then on a separate docket, paper 7 -- let me just double-check this one.  In the Ferraioli matter I think there's also a pending motion to consolidate cases and stay deadlines.  All right.

Let me just -- so I need to organize all of this so

that we can move forward in some sort of systematic way so that it's not too confusing. So what I'm inclined to do is to keep the actions consolidated, to stay the shareholder derivative suits, to deal with the motion to dismiss in the Olsen matter, the class action, and once that's resolved if -- so that would also be denying the cross-motion to vacate the consolidation, clearly, but to do it without prejudice so that, if necessary, when the cases are unstayed, to deal with any motion regarding who's to be lead counsel.

So those are my thoughts. Anybody want to speak up? I see our newest member.

MR. EGLESTON: Good morning, Your Honor.

There's an issue with the motion to stay that the first and the third action entered into that we do not agree to the terms -- we looked at their motion, and there's material terms that have been omitted that we would like included in that motion to stay. They have a motion that they filed with the Court, but they also have a side agreement that wasn't filed with the Court and that side agreement has material -- had terms that are omitted that we want and that we would want that in a stay. So I don't know if we would want to sign on to that stay agreement unless those terms that we want are in that stay. We haven't decided --

THE COURT: Have you talked to them about it or do you need to talk to them about it now?

MR. EGLESTON:  We haven't discussed, because I don't think we had time to discuss because defense got here at a certain time, and my counsel, you know, Mr. Brown and Mr. MacFall, we haven't discussed that, but I would be more than happy to discuss it with them.

THE COURT:  With me indicating what I am inclined to do, does it make sense to give you all ten minutes outside to see if you can fine tune anything that need to be done?  Does that make sense?

MR. EGLESTON:  Perfect sense.

THE COURT:  All right.  You can step outside.  I'll stay right here.  Come back in.

(Recess taken from 10:14 to 10:30 a.m.)

THE COURT:  All right.  I hope we have some good news to report.

MR. EGLESTON:  Your Honor, we're happy --

THE COURT:  The newest one again.

MR. EGLESTON:  I'll sit down if you don't want me to.

THE COURT:  No, no.

MR. EGLESTON:  I'm sorry.  I like speaking sometimes. I'm happy to report that we resolved that provision that we want in the stay with the defendants.  They are going to give it to us.

But we would respectfully ask the Court to vacate the lead plaintiff structure, and I'll just give you a

hypothetical, Your Honor, that it's happened to me, not where, you know, there's been a lead plaintiff battle, but hypothetically, if the defendants decide they want to settle this action with the securities before they brief up a motion to dismiss, which does happen, it's very difficult for us then to then be filing -- and we're invited to the mediation, who has the voice?  They're going to argue, no, we're court-appointed lead counsel, and we haven't had the opportunity to present to the Court that we should be part of that, we should be the ones to be lead counsel.

So I would ask the Court to vacate that, keep the stay in place, and if it ever comes to the point where we are going to battle for lead, then we'll do it.  It gives us all an equal footing.  There's no one there that's going to be saying we have an order here that we're court-appointed.  And I don't think it's appropriate because I was the second filed action. I never got notice.  They consolidated everything without my knowledge.  They entered into the stay without my knowledge. And they had an obligation --

THE COURT:  But wasn't all of it docketed?  So you would have gotten ECF notice.

MR. EGLESTON:  I didn't get an ECF notice that anything was happening in my case.  I'm a separate case.  I'm a second filed case.  And they consolidated two others.  They consolidated their first and third one.  So I wasn't aware.  I

had emailed defense with our complaint on December 13th, didn't get a response, and we had the nominal defendant served on January 6th.  They're in default at the moment, and we've been asking defense for waivers since January 6th or January 7th. But I think the lead plaintiff issue is important because we haven't been given due process to present our case of why we should be lead, why we should be running the action, and we might not ever get there.  This case could be dismissed on a motion to dismiss and then everyone disappears.  But it could go to mediation before a motion to dismiss, and then they're going to be up there saying we're court-appointed lead counsel. We're the ones who have the voice.

THE COURT:  Does someone want to be -- let me hear from Attorney Stone.

MS. STONE:  Erica Stone.  Thank you, Your Honor.

THE COURT:  She stood up before you.

MS. STONE:  I'm happy if Mr. MacFall wants to go first.

I take the position with Mr. Egleston about consolidation and the stay.  Now that we have the terms, we are comfortable with that.  But I agree that paragraph 6 appointing lead counsel should be vacated.

There has been a lot of missteps in this case in how this case has been handled, and it's only fair to give all plaintiffs' counsel the opportunity to provide Your Honor with

contested briefing, and whether that's today or that's after the stay is lifted, that's -- I don't have a strong position either way, but we should have the opportunity to be heard.

This was done by a stipulated motion.  The Court didn't have the benefit of a brief as to the expertise and why these law firms should be appointed colead counsel.  And we're not saying that -- you know, they have a lot of examples of when my firm and Mr. Egleston's firm had done something similar, but nothing they provided the Court is actually the same.  It's very -- I've never seen it nor did they provide an example of a second filed case to be excluded from consolidation.

And it doesn't make sense.  So once that order -- let's say, you know, Mr. MacFall put in a declaration -- I will take him at his word; he is a trustworthy person -- that he didn't know about Mr. Egleston's complaint until after the consolidation motion was filed.

THE COURT:  You represent Barthelemy?

MS. STONE:  Yes.  But we saw it coming that we were -- we joined with Mr. Ferraioli's motion because we could see the same arguments being put forth against my client shortly, now that all these cases have been brought to everyone's attention.  But there was a court order saying that counsel -- the court-appointed lead counsel and defense counsel should bring to the Court's attention any other cases; that wasn't done.  They are not taking proactive steps to look out for the

company's interest.  And whether it was done intentionally, which obviously would have been a big issue, or by mistake, there have been missteps.

You know, going back to Mr. MacFall's declaration, he could attest to what he knew, when he knew, and I take that at his word, but it is peculiar that there was no declaration provided by the Brown Law Firm.  They filed the motion papers. I don't think it's proper for Mr. MacFall to declare what Royse's counsel did or did not know and when they knew.

And also, another misstep is they haven't had local counsel for a few weeks.  They just -- from what the docket appears, they retained local counsel recently when we had to come before Your Honor and find they had to file an opposition, but their local counsel was with the Brown Law Firm and left the firm December, January, maybe we'll say January this year. I don't think Mr. MacFall was told, probably.  I wouldn't expect him to be tracking that.  Nothing was filed on the docket.  They were being lead counsel without any admitted attorney in this Court.  Now they have retained counsel, but that is concerning.

It's also concerning that there have been missteps that the Chen complaint was actually filed in the Eastern District of Pennsylvania on December 17th, mistakenly, and corrected.  Again, Mr. MacFall probably wasn't aware, even though it's his firm's complaint, but the Brown Law Firm filed

that.  These firms are stretched too thin to put the resources in this case, and there have been missteps.

I know the Brown Law Firm has four full-time attorneys.  My office took a look on Friday, they filed at least 25 federal complaints this calendar year.  That's in addition to the 100-plus cases that they have pending.

So we find that here the attention hasn't been paid.  And we haven't said that we wouldn't work with them, but we are concerned about their leadership.  They say that we haven't been cooperative.  They came to us after the motion was filed offering us a portion of this case, and they say we want a quick buck and we're just only caring about a pecuniary interest.  No.  We're actually concerned for the benefit of the company, that the right counsel is representing the company nominally, and that if we wanted a quick buck, we would have accepted it and walked away, but they didn't.  They chose a different path.

So I could elaborate further, Your Honor, but we have serious concerns about the leadership here, and we'd like the opportunity just to brief it before Your Honor, whether that's in short order or whether that's once the stay is lifted.

Thank you, Your Honor.

THE COURT:  Thank you.

Attorney MacFall.

MR. MacFALL:  Thank you, Your Honor.

Your Honor, just to clarify the record, and there are evidentiary submissions that we've made which support this. As indicated in our papers, Rigrodsky attorneys for Chen were aware that the Royse case was on file while we were drafting our complaint. That precipitated a conversation between me and Mr. Brown about working on a coordinated and cooperative basis going forward.

I would note, Your Honor, that plaintiff Ferraioli marked the Royse action as a related case on his civil cover sheet. Clearly he was aware of it at that time. Conversely, we simply were not aware of the existence of the Ferraioli action until after the joint motion was filed. We became aware of the existence of that case when we were so notified by defendants in an email on January 6th, which, again, Your Honor, we have submitted to the Court.

Your Honor, when Mr. Ferraioli's counsel indicated that it was incumbent upon us to reach out to him, I would submit that we couldn't do that if we weren't aware of their existence. Conversely, they were certainly aware of the Royse case filing, which happened approximately a month earlier. There was no effort, to the best of my knowledge, to reach out, to discuss, to coordinate with that action.

Your Honor, not surprisingly, we did discuss consolidation, appointment or designation of lead counsel as is ordinarily done in these cases. At the time we did so, again,

we were unaware of the existence of the Ferraioli action, and the Barthelemy action had not yet been filed.

THE COURT:  So if you don't mind, let's move past the arguments about bad faith, whether or not it was done intentionally or not.  Let's move past that.

MR. MacFALL:  Yes, Your Honor.

THE COURT:  And tell me why their proposal of removing paragraph 6 from the consolidation where it names your firm and the Brown Law Firm as lead counsel and to just have that dealt with later --

MR. MacFALL:  Your Honor, ordinarily that wouldn't pose a problem for me personally.  I can't speak for Mr. Brown. I would be fine with that procedure.  The only reticence I have here, quite frankly, is that doing so would validate the actions of counsel for Ferraioli and Barthelemy, and I would note, Your Honor, that --

THE COURT:  Validate in what way?  What do you mean?

MR. MacFALL:  We reach -- after the Ferraioli motion was filed -- cross motion, I reached out to counsel for Mr. Ferraioli, and this is prior to the time Barthelemy joined in the motion, I proposed working on a cooperative basis -- cooperative and equal basis to coordinate all four cases.  We were hopeful that that would resolve the issue as it has in scores of other cases.  Counsel took a few days to confer with counsel for Barthelemy, which is perfectly reasonable, and when

16

they got back to me they said no.  My concern about validating that rejection, the actions that they took here, by granting any portion of the relief, which we submit that they're just not entitled to, is that it could well set a bad precedent amongst plaintiffs' firms and have a chilling effect on efforts to work on a cooperative and coordinated basis.

I think -- we would submit, Your Honor, that their refusal to take us up on that proposal indicates that they just did not want a seat at the table but they actually sought to displace us in our entirety.  That's my only reticence to that procedure, Your Honor.

THE COURT:  Okay.  I understand.  Thank you.

Counsel, did you want to say something?

MR. BROWN:  Good morning, Your Honor.  This is Tim Brown.

I think that Mr. MacFall's point is important because it seems that this is lawyer driven as opposed to -- why we're in here today is lawyer driven as opposed to trying to run a case well for the purpose of the case is actually supposed to be run, for the benefit of the company.

And I think if you -- in reviewing the motion to vacate the order, we can see that there is attacks there on lawyers, which is -- it's unnecessary, but it also belies the purpose of the motion.  And, you know, there's slights in the Rosen Law Firm's joinder where it says -- it talks about our

modus operandi, my firm's, to file cases and coordinate with others on a timely basis, and then yet, Mister -- yet, our opposition shows that they're doing the same thing and so is the Gainey McKenna firm in numerous cases.  We cite so many exhibits.  We have so many exhibits that show that.

And so I think that the best way to address this is either to give them an opportunity one more time for them to accept our offer, which remains on the table, for them to, you know, they can work the case equally.  They use the word "equal" themselves.  We're offering them to work equally with us.  So that --

THE COURT:  I don't understand what the offer is.  Can you clarify that for me?

MR. BROWN:  Yes, Your Honor.  So -- and what we had intended to convey in our motion papers and today here is that they can do an equal share of work.  And in the event that one day --

THE COURT:  They want equal credit, too.

MR. BROWN:  Exactly, Your Honor, and we offered them that, too.  So in the event that there is fees earned by any of us, then collectively we'll share them on an equal basis.  We offered them that.  We remain --

THE COURT:  So should I just name everyone as lead counsel?  Would that resolve it?

MR. BROWN:  That would be fine with us, sure.

THE COURT:  Okay.  Back row, Egleston?

MR. EGLESTON:  If you don't want me to speak, Your Honor, I don't have to speak.

THE COURT:  You're standing up.  Go for it.

MR. EGLESTON:  Mr. MacFall had said it's going to have a chilling effect.  We have many cases that we work with Mr. MacFall and Mr. Brown and Rosen that we're not lead.  We're all working together.  So it's not going to have a chilling effect.  What is significant --

THE COURT:  Can you answer my question about whether or not --

MR. EGLESTON:  Whether we would work -- everyone as colead?

THE COURT:  Yes.

MR. EGLESTON:  Yes, we would.

THE COURT:  You would what?

MR. EGLESTON:  If you want to put on that order that we're all colead counsel, I would have no problem with that, Your Honor.

THE COURT:  All right.  So no one has any objections to that.  That will be the modification.  All right. Everything resolved?  See, you all could have talked about that out there.

MR. EGLESTON:  Now you don't need to hear from me, Your Honor.

THE COURT:  Did you want to say something, Attorney Stone?

MS. STONE:  Thank you, Your Honor.

I mean, that seems like a solution, not to burden the Court with motion practice later, but I will accept that offer.

THE COURT:  All right.  So I think I need a new proposed order.  Who would like to take the lead on that, just so that the docket is clean?

MR. BROWN:  We could do that, Your Honor.

THE COURT:  All work on it together, so equal responsibility.

MR. BROWN:  We'll prepare it and circulate it to all our friends here, and hopefully that will help cultivate the friendship.

THE COURT:  All right.

MR. EGLESTON:  As you can see, Your Honor, I wasn't very fast to get up for that one.

THE COURT:  I should have made you do it.

MR. EGLESTON:  I'll have my firm do it.  That's not a problem.

THE COURT:  So I think we now have a plan.  They will remain consolidated.  There will be a new proposed order submitted.  The shareholder derivative suits will be stayed while the motion to dismiss in the class action is being dealt with, that the moving papers have been filed but no opposition

yet.  And -- let me just make sure.  So the cross-motion to vacate, that's denied.  And I think that takes care of everything that is pending.

So the party that is not here is the Olsen plaintiff, and so that will just take its natural course.

Any questions?

MR. MacFALL:  Your Honor, just for purposes of clarity, and Your Honor may have addressed it, defendants' motion to consolidate the Ferraioli action into the consolidated action I assume is granted.

THE COURT:  Yes, yes.

MR. MacFALL:  Thank you, Your Honor.

THE COURT:  All right.  Great.

MS. McCAUGHEY:  Your Honor, I'm sorry, just one other housekeeping matter.  I don't know -- I think based on the representations earlier, and I don't want to speak for plaintiffs' counsel, it doesn't sound like there is an opposition to the motion to stay, so it sounds like that might be ripe to be entered.

THE COURT:  Yes.  That's happening.  I just want to take care of those loose ends before I actually enter that, but it will be stayed.

MS. McCAUGHEY:  Great.  Thank you very much.

THE COURT:  And so it will remain that way until someone, hopefully everyone, gets the Court's attention with

requesting hopefully a joint motion to lift the stay.

MR. BROWN:  Sorry, Your Honor, just, also for the sake of clarity, so I understand that defendants filed the motion to consolidate the Ferraioli action.  I don't believe that a similar motion was made to consolidate the -- I'm sorry.  I'm having trouble pronouncing -- the Barthelemy action, but I think the understanding that we're all coming to here is that will be consolidated.  So perhaps the proposed order will serve to consolidate that case, too.

THE COURT:  Exactly.  That's what it should do, four cases consolidated into one.  No stragglers.  All right.  Very good.  Thank you.

THE CLERK:  We're adjourned.

(Adjourned at 10:48 a.m.)

CERTIFICATE OF OFFICIAL REPORTER


I, Linda Walsh, Registered Professional Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter, to the best of my skill and ability.

Dated this 25th day of April, 2025.


/s/ Linda Walsh

Linda Walsh, RPR, CRR

Official Court Reporter