**UNITED STATES OF DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE AGENUS INC. SECURITIES LITIGATION | Case No.: 1:24-cv-12299-AK |
| This Document Relates to:<br><br>    ALL ACTIONS | Leave to File Excess Pages Granted on April 7, 2025 |

**<u>REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................3

I.    PLAINTIFF'S OPPOSITION FAILS TO IDENTIFY ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.................................................................................4

    A.    The Challenged Statements Are Not Misleading by Omission. ...................................4

    B.    The Challenged Statements Remain Non-Actionable for Multiple Additional Reasons. ..................................................................................................................7

II.    PLAINTIFF'S SCIENTER ALLEGATIONS ARE INSUFFICIENT................................12

    A.    The Opposition Does Not Identify a Strong and Cogent Inference of Scienter. ........12

    B.    Inferences of Non-Culpable Intent Far Outweigh Plaintiff's Implausible Theory of Scienter. ..................................................................................................16

III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION...........................17

IV.    THE COURT CAN TAKE JUDICIAL NOTICE OF DEFENDANTS' EXHIBITS. .........19

V.    THE OPPOSITION'S REQUEST FOR LEAVE TO AMEND THE AMENDED COMPLAINT SHOULD BE DENIED. ...............................................................................20

CONCLUSION...........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amylin Pharms., Inc. Sec. Litig.*,
   No. 1-cv-1455, 2003 WL 21500525 (S.D. Cal. May 1, 2003) ...................................................9

*In re Biogen Inc.*,
   193 F. Supp. 3d 5 (D. Mass. 2016) .....................................................................................13

*Brennan v. Zafgen, Inc.*,
   199 F. Supp. 3d 444 (D. Mass. 2016) ...................................................................................20

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002)...........................................................................................11, 12

*City of Bristol Pension Fund v. Vertex Pharms. Inc.*,
   12 F. Supp. 3d 225 (D. Mass. 2014) ...................................................................................10

*City of Miami Fire Fighters' and Police Officers' Retirement Trust v. Cerence Inc.*,
   No. 22-cv-10321, 2024 WL 1258149 (D. Mass. Mar. 25, 2024) ...........................................10

*Cody v. Conformis, Inc.*,
   199 F. Supp. 3d 409 (D. Mass. 2016) .....................................................................................9

*Corban v. Sarepta Therapeutics, Inc.*,
   868 F.3d 31 (1st Cir. 2017).............................................................................................7, 15

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   54 F.4th 42 (1st Cir. 2022)................................................................................................13

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
   778 F.3d 228 (1st Cir. 2015)..............................................................................................20

*In re Galileo Corp. S'holders Litig.*,
   127 F. Supp. 2d 251 (D. Mass. 2001) ..................................................................................13

*Ganem v. InVivo Therapeutics Holdings Corp.*,
   845 F.3d 447 (1st Cir. 2017)................................................................................................3

*Gent v. CUNA Mut. Ins. Soc.*,
   611 F.3d 79 (1st Cir. 2010)................................................................................................19

*In re Genzyme Corp. Sec. Litig.*,
   754 F.3d 31 (1st Cir. 2014)..................................................................................................7

*Hackel v. AVEO Pharms., Inc.*,
   474 F. Supp. 3d 468 (D. Mass. 2020) ................................................................7

*Harrington v. Tetraphase Pharms. Inc.*,
   No. 16-cv-10133-LTS, 2017 WL 1946305 (D. Mass. May 9, 2017) ........................................8

*Hill v. Gozani*,
   638 F.3d 40 (1st Cir. 2011) ................................................................4

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................4

*Isham v. Pernini Corp.*,
   665 F. Supp. 2d 28 (D. Mass. 2009) ................................................................15

*Kader v. Sarepta Therapeutics*,
   887 F.3d 48 (1st Cir. 2017) ................................................................12

*Kader v. Sarepta Therapeutics*,
   No. 1:14-cv-14318, 2016 WL 1337256 (D. Mass. Apr. 5, 2016) ..............................................19

*Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*,
   838 F.3d 76 (1st Cir. 2016) ................................................................16

*Macquarie Infra. Corp. v. Moab Partners*,
   601 U.S. 257 (2024) ................................................................14

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
   MDL No. 1658 (SRC), 2015 WL 2250472 (D.N.J. May 13, 2015) ..........................................9

*Meyer v. Biopure Corp.*,
   221 F. Supp. 2d 195 (D. Mass. 2002) ................................................................8

*Miss. Pub. Emps. Ret. Sys. v. Bos. Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008) ................................................................15

*N. Collier Fire Control & Rescue Dist. Firefighters' Pension Plan v. Mercury Sys., Inc.*,
   768 F. Supp. 3d 133 (D. Mass. 2025) ................................................................7

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
   537 F.3d 35 (1st Cir. 2008) ................................................................5

*Paice v. Aldeyra Therapeutics, Inc.*,
   No. 23-cv-11737, 2025 WL 815065 (D. Mass. Mar. 14, 2025) ................................................6, 7, 13

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) ................................................................9

*Pizzuto v. Homology Meds. Inc.*,
No. 1:23-CV-10858-AK, 2024 WL 1436025 (D. Mass. Mar. 31, 2024) ........................ *passim*

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ...........................................................................14

*Premca Extra Income Fund LP v. iRobot Corp.*,
763 F. Supp. 3d 121 (D. Mass. 2025) .....................................................................3, 5, 12

*Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*,
638 F. Supp. 2d 120 (D. Mass. 2009) ..........................................................................11

*Ratner v. OvaScience, Inc.*,
134 F. Supp. 3d 621 (D. Mass. 2015) ..........................................................................19

*In re Sepracor, Inc. Sec. Litig.*,
308 F. Supp. 2d 20 (D. Mass. 2004) ............................................................................9

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
707 F.3d 95 (1st Cir. 2013) .........................................................................................8

*State Tchrs. Ret. Sys. of Oh. v. Charles River Lab'ys Int'l, Inc.*,
No. 23-cv-11132-DJC, 2024 WL 3258293 (D. Mass. July 1, 2024).........................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...............................................................................................12, 16

*In re Vertex Pharms., Inc., Sec. Litig.*,
357 F. Supp. 2d 343 (D. Mass. 2005) ..........................................................................13

*Wasson v. LogMeIn, Inc.*,
496 F. Supp. 3d 612 (D. Mass. 2020) ..........................................................................10

*In re Wayfair, Inc. Sec. Litig.*,
471 F. Supp. 3d 332 (D. Mass. 2020) ..........................................................................18

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................................12

**Other Authorities**

Fed. R. Evid. 201 ..............................................................................................................19

Fed. R. Civ. P. 9(b) ............................................................................................................5

Defendants Garo H. Armen, Christine M. Klaskin, Steven J. O'Day, Todd Yancey (the "Individual Defendants"), and Agenus Inc. ("Agenus" or the "Company") submit this Reply Brief to Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff's opposition contends that Defendants supposedly (mis)represented to investors that Agenus had data sufficient to obtain Accelerated Approval for the immunotherapy treatment BOT/BAL. Opp. at 16. According to Plaintiff, Defendants were motivated to make these alleged misrepresentations in order to inflate the Company's stock price so as to raise $149.8 million in capital, "barely enough to complete Phase 2 trials" for BOT/BAL. Opp. at 2. This alleged fraud was then supposedly exposed when the FDA allegedly denied such approval. Opp. at 39. But the Amended Complaint ("AC") simply fails to plead facts to support any component of this narrative under any standard, let alone the heightened pleading standards of the PSLRA.

A close reading of the statements that Plaintiff attributes to the Defendants reveals that *at no point* did any Defendant represent—much less misrepresent—the likelihood that Agenus could or would obtain Accelerated Approval. To the contrary, as set forth in Appendix A to the motion to dismiss (the "Motion"), the Defendants disclosed (only) their plan to seek Accelerated Approval, the data they were relying on, their forward-looking opinions about the data, and *the risk that the FDA might not agree* with their views.

The Opposition fails to identify particularized factual allegations as to why any of the dozens of alleged misleading statements set forth in the AC are false or misleading on a statement-by-statement bases, as the PSLRA requires. But even a brief review of the statements that Plaintiff apparently views as the most compelling—given that he highlighted them in bold and italics on the very first page of the Opposition—demonstrate the glaring flaws in his claim. For example, Plaintiff claims that Defendants "assured investors" that "the durability and maturity of the data is

-1-

stronger today than it's ever [been] before." Opp. at 1 (citing AC ¶ 158). This statement says nothing about the prospects of Accelerated Approval, and Plaintiff points to no factual allegations that the "durability" and "maturity" of the BOT/BAL data were not in fact "stronger" than ever before. Plaintiff also highlights two statements reflecting optimism about the BOT/BAL data but can cite no supporting factual allegations showing that Defendants did not sincerely hold those opinions or that they were in any way inaccurate.[1] Finally, Plaintiff highlights the statement that "we have had significant input from our regulatory advisers on what that minimum [follow-up on Phase 2 trials] should be," *see id.* (citing AC ¶ 162), but again fails to identify any particularized factual allegations that Defendants did not receive such input from regulatory advisors or that any such opinions about future Phase 2 trials were inaccurate, let alone not sincerely believed.

In addition, contrary to Plaintiff's bald assertion, the FDA did *not* even deny Accelerated Approval, *see* Opp. at 39, nor does Plaintiff allege that the FDA questioned the accuracy of Agenus's data, suggested it was "not powered appropriately," or otherwise said anything that would suggest that the Defendants' prior statements about the data were inaccurate. To be sure, in July 2024 the FDA discouraged an Accelerated Approval application based on the FDA's own judgment-based assessment of whether Agenus's data for a surrogate endpoint was "reasonably likely" to predict a clinical benefit. *See* AC ¶¶ 61, 198. But the Defendants' failure of clairvoyance about interim regulatory feedback does not somehow render their prior statements about their plans, data, or opinions false or misleading. Simply put, Plaintiff's "fraud by hindsight" theory is not actionable.

---

[1] *See* Opp. at 1 (citing the statements "[T]he treatment is 'supported with safety, efficacy and clinical pharmacology [sufficient] to discuss with an accelerated pathway'" (AC ¶ 160) and "we'd be able to demonstrate a point estimates for response, durability of response… and that is trending toward a survival benefit" (AC ¶ 144)). The FDA is yet to even disagree with either of these statements of opinion, but even if it did such disagreement with the Company's optimistic views does not make them fraudulent.

-2-

Plaintiff's scattershot attempt to identify sufficient allegations of scienter is equally unavailing. The only compelling inference from the allegations remains that the Defendants genuinely believed in BOT/BAL and acted accordingly. Here again, the Opposition's Preliminary Statement actually demonstrates the flaws in Plaintiff's "fraud" claim by highlighting corporate fundraising designed to finance the completion of Phase 2 trials. The only compelling inference from those allegations is that Defendants believed in the prospects of BOT/BAL—if they did not, raising financing to support future Phase 2 trials would have been a fools errand.

Similarly, the AC fails to plead loss causation because the alleged "corrective disclosure"—namely, the Company's disclosure about its End-of-Phase 2 meeting with the FDA— was in no way "corrective," because nothing about the disclosure revealed some previously hidden truth about Agenus's data or otherwise. And finally, Plaintiff's reliance on a group of supposed former employees who did not share the Defendants' view of BOT/BAL's promise cannot save Plaintiff's day. These so-called confidential witnesses ("CWs") generally offer nothing more than a mix of irrelevant and conclusory statements of opinion that, at most, simply differed from the Defendants' opinions. The Amended Complaint ("AC") must be dismissed.

## ARGUMENT

In enacting the PSLRA, Congress imposed "heightened" pleading requirements for actions brought under the federal securities laws and required plaintiffs to plead with specificity *each* false statement, *why* it is misleading, and facts giving rise to a strong inference that *each* defendant acted with scienter. *Premca Extra Income Fund LP v. iRobot Corp.*, 763 F. Supp. 3d 121, 156 (D. Mass. 2025). A plaintiff must plead facts—not simply assert conclusions—that show the elements of a securities fraud claim, including, *inter alia*, a material misrepresentation or omission, scienter, and loss causation. *Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447, 454 (1st Cir. 2017). The Amended Complaint ("AC") fails on all accounts.

## I. PLAINTIFF'S OPPOSITION FAILS TO IDENTIFY ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.

### A. The Challenged Statements Are Not Misleading by Omission.

Out of the gate, Plaintiff effectively concedes—as he must—that he is relying on an "omissions" theory of fraud because the Defendants' statements at issue were "literally accurate" and therefore not materially false. *See* Opp. at 2, 15-18. 23. For Plaintiff's omissions theory to survive dismissal, he must plead particularized facts showing that Defendants omitted "facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Hill v. Gozani*, 638 F.3d 40, 57 (1st Cir. 2011) (citation modified). Plaintiff's proffered "omissions," however, are wholly insufficient to support his claims.

Plaintiff mischaracterizes several of the Defendants' statements in an attempt to meet this standard. For example, Plaintiff claims that the Defendants "assured investors that BOT/BAL's trials and data were sufficient to obtain Accelerated Approval." Opp. at 16. But the statements Plaintiff cites for these "assurances" do no such thing. Plaintiff cites Defendant Armen's alleged statement that the "durability and maturity of the data is stronger today than it's ever [sic] before" and Defendant Yancey's alleged statement that "I certainly expect that we'd be able demonstrate … durability of response for patients with stable disease or better and that is trending toward a survival benefit."[2] *Id.* at 6, 16 (citing AC ¶¶ 82, 158). These statements say *nothing* about the *likelihood* that Agenus would obtain Accelerated Approval; rather, they report only trends in the data—trends that Plaintiff has not challenged as false.[3] The same goes for Defendant O'Day's

---

[2] This is the *only* allegedly false and misleading statement attributed to Defendant Yancey in the AC.

[3] This distinguishes the case at bar from Plaintiff's authority where the pharmaceutical defendant issued a press release claiming that its trial patients "showed a significantly greater reduction in viral load," while it failed to disclose study results which directly contradicted its statements. *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005) (defendants failed to disclose "the results from the 435 Sub-Study, which showed that REMUNE had no effect on viral loads"). Even Plaintiff's sweeping generalizations about BOT/BAL do not include such grave allegations. Moreover, to the extent Plaintiff argues that Defendants' statements falsely claimed that Agenus employed

alleged statement that he believed Agenus had a basis "to discuss … an accelerated pathway" and Defendant Armen's alleged statement that he "knew" that "overall response rates translate to longer-term benefit." *Id.* (citing AC ¶¶ 146, 160). These statements are matters of opinion, which provide no "assurance" that Agenus would obtain Accelerated Approval. *See* Mot. at 7-9. Additionally, Plaintiff cites no particularized facts that even undermines Defendants' opinions about the "durability" and "maturity" of the data, or their expectations of future survival benefits.

Moreover, the alleged omissions cannot render Defendants' statements about the likelihood that Agenus would obtain Accelerated Approval misleading because, for one, the alleged statements offered no such prediction or assurance. In addition, for all the reasons set forth in the Motion, the allegedly omitted information is either irrelevant, too generalized and conclusory to credit, or both. *See* Mot. at 14-19. For example, Plaintiff cites the allegation that CW6 supposedly heard that the Company's studies "were not powered appropriately to capture survival or durability data."[4] *See* Opp. at 18; AC ¶ 95. But the two-sentence paragraph in which this allegation appears in the AC provides no details about *how* the studies were supposedly deficient, nor does the AC (or Plaintiff's opposition) claim that the survival and durability data the Company publicly disclosed was false, inaccurate, or untrustworthy.[5] *See* Mot. at 10 (quoting

---

"integrated, end-to-end capabilities," Plaintiff has not made sufficiently particular allegations explaining how that statement was false to meet Rule 9(b)'s demanding pleading standards.

[4] In the First Circuit, "[c]onfidential witnesses are permissible, [] but they must be buttressed by other plausibly pleaded facts. The First Circuit cautions against reliance on confidential witnesses." *Premca Extra Income Fund LP*, 763 F. Supp. 3d at 149; *see also N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 51 (1st Cir. 2008) ("We have never said a complaint would survive if it were based only on confidential source allegations. Indeed, we have said there must be a hard look at such allegations to evaluate their worth.").

[5] This two-sentence, conclusory allegation does a lot of work for Plaintiff, providing the principal support for Plaintiff's claim that the Defendants supposedly also "misrepresented BOT/BAL's efficacy." Opp. at 22-26. Tellingly, though, Plaintiff does not allege that the *actual data* that the Company disclosed was false or misleading, but instead points only to the adjectives the Defendants at times used to share their opinions about the data. *See* Opp. at 22. This conspicuous decision gives away the game, especially given that investors could evaluate the (unchallenged) data for themselves. *See* Mot. at 15.

survival data disclosed by Company in 2023 and 2024). Plaintiff further cites supposed "uniform opposition to using the data to seek Accelerated Approval," citing three paragraphs in the AC. Opp. at 17 (citing AC ¶¶ 96, 98, 102). Two of those paragraphs, however, say *nothing at all* about Accelerated Approval (¶¶ 96, 98). And while the third alleges that the Company's "FDA Submission Team"—for which no head count is given and whose members are not identified— supposedly said that the "the Company needed more time on trials," the allegation contains no suggestion that Defendants' statements about the Company's BOT/BAL data, trendlines, or belief about clinical benefit were somehow misleading. *See Paice v. Aldeyra Therapeutics, Inc.*, No. 23-cv-11737, 2025 WL 815065, at *12 (D. Mass. Mar. 14, 2025) (finding no misleading statement when plaintiff "assert[ed] the . . . data [included in a New Drug Application] was insufficient, [but did] not explain why or how"); *see also Pizzuto v. Homology Meds. Inc.*, No. 1:23-CV-10858-AK, 2024 WL 1436025, at *10 (D. Mass. Mar. 31, 2024) ("Reasonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions.") (citation omitted).

Plaintiff attempts to salvage his omission theory by also pointing to statements about the Company's focus on pursuing regulatory approval for BOT/BAL, such as the generic and unremarkable statement that Agenus's "immediate efforts are directed towards ensuring that our development strategies align seamlessly with the FDA's rigorous standards." Opp. at 18. Plaintiff claims that these statements are misleading by omission because (i) some Agenus employees had dissenting views on the timing of the FDA approval process and/or left the Company and (ii) because Agenus supposedly was "disregarding FDA requirements" and "expecting the FDA to improperly consider post-submission data." *Id.* (citing AC ¶¶ 96, 98, 102, 129-30). Dissent about timing, however, does not render statements of intent about Agenus's strategy misleading. And

the AC paragraphs that Plaintiff cites allege nothing about disregarding Accelerated Approval requirements or expecting FDA to provide improper consideration. To the contrary, they allege only that Agenus provided the FDA with post-submission data; such an act cannot render earlier statements about the Company's intent to pursue Accelerated Approval somehow misleading. Ultimately, Plaintiff's line of argument boils down to a claim that because the FDA discouraged an Accelerated Approval application—i.e., because the Company suffered a setback—somehow the Defendants' prior statements must have been misleading. That is plainly insufficient to allege securities fraud. *See Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 39 (1st Cir. 2017) (no securities fraud when plaintiff failed to allege that defendant "knew [when making the challenged statements] that its efforts would suffer a setback at that time").

**B.      The Challenged Statements Remain Non-Actionable for Multiple Additional Reasons.**

Plaintiff's attempt to rebut the multitude of other reasons that the challenged statements (AC ¶¶133-65) are non-actionable similarly fails.

**PSLRA Safe Harbor.** Plaintiff cannot sidestep the safe harbor. Defendants' statements regarding the Company's "plans and objectives . . . for future operations" and "statement[s] of the assumptions underlying or relating to those plans and objectives" are immunized so long as they are accompanied by meaningful cautionary language, which they are here.[6] *See In re Genzyme*

---

[6] Statements need not be "made in the future tense" to qualify for the safe harbor, so long as they reflect "plans and objectives." *Alderyra Therapeutics*, 2025 WL 815065, at \*13. In addition, the inclusion of some present facts in a forward-looking assertion does not render the whole statement ineligible for the safe harbor; courts instead identify the "allegation of falsehood" to see which parts of the statements Plaintiff has challenged. *See N. Collier Fire Control & Rescue Dist. Firefighters' Pension Plan v. Mercury Sys., Inc.*, 768 F. Supp. 3d 133, 154 (D. Mass. 2025). Many of the challenged statements here inarguably are in the future tense in any event. *See, e.g.*, Stmt. 2 ("Looking ahead, to 2023, we *anticipate* achieving important clinical milestones . . . ."); Stmt. 10 ("[*W]e'll have* response rate, duration of response, PFS and preliminary survival in these patients as they mature over the course of the year."); Stmt. 15 ("Of course, ideally, we can wait 5 years but *we're not going to do that*. . . . [Y]ou can sort of extrapolate what the follow up period will be between now and the potential FDA meeting."); Stmt. 24 ("We believe our fully integrated, end-to-end capabilities . . . *will uniquely position us* to produce novel therapies on accelerated timelines.") (emphases added). Courts have repeatedly deemed statements containing such language as forward-looking. *See Hackel v. AVEO Pharms., Inc.*, 474 F. Supp. 3d 468, 478 (D. Mass. 2020) ("[T]he use of language such as 'expect' and 'anticipate,' []

*Corp. Sec. Litig.*, 754 F.3d 31, 45 (1st Cir. 2014). The statements at issue concern Agenus's plans and intent to apply for Accelerated Approval and were accompanied by robust risk factor disclosures that disclosed the very risk that Plaintiff complains came to pass, not any allegedly concealed risk. *Cf. Harrington v. Tetraphase Pharms. Inc.*, No. 16-cv-10133-LTS, 2017 WL 1946305, at *9 (D. Mass. May 9, 2017) ("Tetraphase's warnings are anything but boilerplate; the statements identify specific risk factors including . . . the possibility of the FDA not approving the drug."). Such statements plainly qualify for the safe harbor under the PSLRA.[7] *See Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195, 203 (D. Mass. 2002) (statements that concern a company's plan to file for FDA approval fall within the PSLRA's safe harbor). Plaintiff's conclusory claim that the Company's cautionary language was "boilerplate" is wholly unconvincing. The cautionary language specifically and precisely addressed the very risk that serves as the entire basis for Plaintiff's lawsuit: the risk that the "the FDA may not agree with [the Company's] plans" to seek Accelerated Approval. *See* Ex. 8 to Mot. (2023 Form 10-K Part I, Item 1A); Mot. at 21-22, 28-29.

**Non-Actionable Opinions.** Plaintiff's claim that the allegations establish that "Defendant had no basis for their opinions" does not hold water. There are *no* allegations—from CWs or otherwise—suggesting that any of the Defendants did not genuinely hold the opinions they disclosed. To the contrary, Plaintiff's own allegations are that Agenus was overconfident (AC ¶

---

signals looking forward."). Other statements qualify for protection because they discuss the timeline of BOT/BAL development and FDA submission. *See, e.g.*, Stmt. 8 ("[O]ur focus is squarely on advancing activities for a potential Accelerated Approval filing.").

[7] The cases Plaintiff cites are plainly inapplicable to the facts here. For example, in *In re EVCI Colleges Holding Corp. Sec. Litig.*, the court took issue with the risk factors not because they were boilerplate, but because they "did not disclose that the risk factors were not merely hypothetical . . . but were in fact happening." 469 F. Supp. 2d 88, 102-03 (S.D.N.Y. 2006). Similarly, Plaintiff points to *Silverstrand Invs. v. AMAG Pharms., Inc.*, for the proposition that "boilerplate discussions do not tell the investors how the risks may affect their investment." 707 F.3d 95, 103 (1st Cir. 2013). Agenus' warnings, however, warned of the exact risks that later transpired. *See, e.g.*, Ex. 8 to Mot. at 23 (2023 Form 10-K) ("We may seek to utilize, among other strategies, FDA's accelerated approval program for our product candidates given the limited alternatives for treatments for certain rare diseases . . . , *but the FDA may not agree with our plans*.") (emphasis added).

102) and that Defendant Armen allegedly dismissed employees who disagreed with him (AC ¶ 15). These allegations support the conclusion that the Defendants' opinions were *very* genuinely held.[8] *See Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 419 (D. Mass. 2016) ("[A] sincere statement of pure opinion is not an 'untrue statement of material fact.'") (citation omitted). This conclusion is further demanded by the fact that the FDA has issued no directives on the quantum or nature of necessary data to meet the "reasonably likely" standard for Accelerated Approval (putting aside the fact that the Defendants *never* predicted the likelihood of Accelerated Approval) and the AC lacks any particularized allegations suggesting that the Defendants' opinions did not fairly align with the totality of the information available to them. Plaintiff's cherry picking of a small number of individuals with dissenting views and the fact that Agenus supplemented its submission to the FDA as its data matured do not somehow render Defendants' genuinely held opinions actionable.[9]

Plaintiff's argument that Defendants' statements cannot be considered opinions unless they are preceded by "we believe" or "we think" flies in the face of common sense and fares no better. "Statements of opinion are often prefaced by phrases like 'we think' or 'we believe,' but those phrases are sufficient—not necessary—to make a statement an opinion rather than fact." *Homology Meds,* 2024 WL 1436025, at *13 (quoting *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023)). Here, the contested statements reflect nothing more than the

---

[8] Plaintiff's reference to *In re Merck & Co. Sec., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2015 WL 2250472, at *21 (D.N.J. May 13, 2015) is inapposite. There, the court determined that the company lacked a reasonable basis for its expressed hypothesis since the company had significant reasons to know it was incorrect, including undisclosed discrediting data and "the FDA's specific and unequivocal warning" regarding the hypothesis. *Id.* The AC contains no comparable allegations.

[9] Plaintiff's reference to the *Sepracor* and *Amylin* decisions are also inapposite, as Plaintiff even acknowledges in the opposition. The AC does not allege that Agenus violated a clear-cut FDA rule, *cf. In re Sepracor, Inc. Sec. Litig.*, 308 F. Supp. 2d 20, 31 (D. Mass. 2004), nor that Agenus received prior negative feedback from the FDA, *cf. In re Amylin Pharms., Inc. Sec. Litig.*, No. 1-cv-1455, 2003 WL 21500525, at *5 (S.D. Cal. May 1, 2003).

Defendants' opinions about the clinical trial data, including how they hoped the FDA would interpret the data (but without making any prediction). Such opinions are not actionable. *See id.*

**Puffery.** Plaintiff similarly cannot escape the fact that many of the challenged statements are non-actionable puffery that clearly expressed "loose optimism about [BOT/BAL's] current state of affairs and its future prospects." *See Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612, 632-33 (D. Mass. 2020) (citation omitted). Defendants' statements that BOT/BAL was "demonstrating promising activity" and had made "significant strides," that the Company's studies "strengthen our conviction in BOT/BAL potential" and are "contribut[ing] valuable insights," and that BOT was offering "renewed hope" and displaying "remarkable clinical activity" and "great potential," among other similar statements (*see* Mot. at 23 & n.15), were the types of expressions of optimism that courts have repeatedly found to be puffery and thus non-actionable. *See Wasson*, 496 F. Supp. 3d at 633.

Plaintiff misconstrues the applicable law when he argues that these optimistic statements are not puffery because they cover topics of importance to investors. Opp. at 20. The relevant question for the inquiry is "whether the allegedly misleading statement offers details on which a reasonable investor would rely." *City of Miami Fire Fighters' and Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321, 2024 WL 1258149, at *11 (D. Mass. Mar. 25, 2024) (citation modified). Expressing "conviction in BOT/BAL potential," or describing the trial data as "very, very robust" is not the sort of statement that offers *details* on which a reasonable investor would rely. *See* AC ¶¶ 140, 144. Rather, such "highly optimistic" responses to positive clinical trial results constitute puffery because "a reasonable investor would also know the challenges of obtaining FDA approval" and therefore would not "interpret the interim results … for a pharmaceutical as a guarantee, or even a meaningful prediction [that the company's goals] will be

-10-

realized." *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 238 (D. Mass. 2014).

Plaintiff's invocation of CW statements by former employees who for whatever reason now claim to have not shared the Defendants' optimism does not change the result. *See Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*, 638 F. Supp. 2d 120, 128 (D. Mass. 2009) ("Plaintiff must provide more than 'tales from the trenches' from a score of former [] employees."). For one, Plaintiff relies on a logical fallacy: even taking as true Plaintiff's claim that certain employees "warned [Defendant Armen] about misrepresenting trial data," Opp. at 25 (citing AC ¶¶ 104-08), it does *not* follow that Defendant Armen misrepresented data, much less that he *knew* he represented data. In addition, a close examination of the AC's allegations reveal that Plaintiff tries to build his narrative on a foundation that cannot bear the weight. For example, CW4 apparently claims that Defendant Armen's "statements to investors appeared 'over the top,'" but CW4 conspicuously does claim they were *false or misleading*. AC ¶ 104. Similar, CW7 apparently claims to have "insisted that Agenus be careful about how they talked about BOT/BAL," but conspicuously does *not* identify any public statements that were *false or misleading*. AC ¶ 105. Instead, CW7 apparently takes issue with Defendant Armen's *private* statement "we save lives" and claims that the opinion phrase "unprecedented survival" was improper, but simultaneously acknowledges that BOT/BAL *did* save some lives and *did* show "longer survival benefits" for

some patients.[10] *Id.* When considered holistically, it is clear that the CW allegations must be disregarded.[11]

## II.    PLAINTIFF'S SCIENTER ALLEGATIONS ARE INSUFFICIENT.

Plaintiff's opposition is not short on potential theories of scienter, offering nine sub-sections. *See* Opp. at 31-34. But to meet the rigorous standards for pleading scienter under the PSLRA, Plaintiffs must set forth particularized allegations that "giv[e] rise to a *strong inference* that the defendant acted with the required state of mind," *Kader v. Sarepta Therapeutics*, 887 F.3d 48, 57 (1st Cir. 2017) (quoting 15 U.S.C. § 78u-4(b)(2)(A)) (emphasis in original), and Plaintiff's theory "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiff fails to do so, not least because the more compelling inference is that the Defendants genuinely believed (and continue to believe) in BOT/BAL's promise and acted accordingly.

### A.    The Opposition Does Not Identify a Strong and Cogent Inference of Scienter.

Plaintiff's opposition effectively concedes that the AC contains no particularized allegations directly establishing that the Defendants supposedly *knew* they were making materially false and misleading statements. *See* Opp. at 30-34. Faced with that reality, Plaintiff doubles down on conclusory allegations that Defendants (i) supposedly had access to contrary information about

---

[10] Plaintiff also cites CW statements that are at war with his own allegations. For example, CWs supposedly opine that "Agenus lacked staff to apply for Accelerated Approval." Opp. at 11 (citing AC ¶¶ 114-15). But the AC simultaneously alleges that the Company pursued the Accelerated Approval pathway with the FDA up to and including an End-of-Phase 2 meeting in July 2024. AC ¶ 88. The alleged "donor and supplier issues," Opp. at 11, similarly add nothing; Plaintiff fails to demonstrate how these alleged issues materially affected Agenus' clinical trials or progress toward potential FDA approval.

[11] Given these shortcomings in the CW allegations, Plaintiff's contention that they are supposedly "mutually corroborative" offers nothing material. *See* Opp. at 21-22 (citing *In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002)). In *Cabletron*, the CWs offered "not conclusory allegations of fraud, but specific descriptions of the precise means through which it occurred." 311 F.3d at 30. Here, the CW allegations fail to even offer conclusory allegations of fraud, much less specific descriptions of such a fraud.

BOT/BAL, which was important to the Company; (ii) supposedly met with Agenus employees who held differing views; and (iii) had high-level positions within the Company.

As an initial matter, it is natural (and expected) that individuals in Defendants Armen's and O'Day's positions would review clinical data reports and meet with employees responsible for or involved in the BOT/BAL trials. *See Premca Extra Income Fund*, 765 F. Supp. 3d at 159 (plaintiff's "reliance on executives' high level of access" was "a dressed-up 'must have known' claim"). But the simple fact that others at Agenus supposedly held differing opinions on BOT/BAL's promise (based on underlying data that the Plaintiff does not challenge) does not somehow suggest that the Defendants *knew* their interpretations of the data were false or how the FDA would interpret the data. *See In re Vertex Pharms., Inc., Sec. Litig.*, 357 F. Supp. 2d 343, 355 (D. Mass. 2005) ("The existence of scientific disagreement within a company as to the potential viability of a drug in development, without more details about the substance of the debate, cannot provide the necessary strong showing of scienter.") (citation omitted). Plaintiff's conclusory allegations of scienter based on BOT/BAL's importance and on the Individual Defendants' positions and general access to information have been repeatedly rejected by courts in this Circuit for falling short of the requisite scienter standard. *See, e.g., In re Fin. Oversight & Mgmt. Bd. for P.R.*, 54 F.4th 42, 55-56 (1st Cir. 2022) (finding inference of scienter to be insufficient when allegations based on the nature of defendants' roles were "too broad and speculative"); *In re Biogen Inc.*, 193 F. Supp. 3d 5, 51 (D. Mass. 2016) (indicating that absent a "smoking gun email" or related "plus factor," courts refuse to infer scienter from general assertions that senior executives must have known about certain facts); *In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 261 (D. Mass. 2001) (rejecting plaintiff's scienter argument based on "an allegation that a defendant 'must have had knowledge of the facts'") (citation omitted); *Aldeyra Therapeutics, Inc.*,

-13-

2025 WL 815065, at *9-10 (dismissing allegations of the importance of defendants' drug candidates to the company, as they contained no evidence showing that the defendants knew their actions were misaligned with the FDA).

Plaintiff's additional scienter allegations get Plaintiff no further. *First*, Plaintiff repeatedly points to allegations about employees who were let go from the Company and about Defendant Armen's opinion of the FDA. *See* Opp. at 30-32. But these personnel-related issues and personal beliefs do not support a cogent and compelling inference of scienter. The AC conspicuously does not allege that the relevant CWs were let go *because* of their supposed dissenting views, only that they supposedly expressed dissenting views and at some later point were dismissed from their jobs – by a company that Plaintiff himself acknowledges was conserving its financial resources. *See* Opp. at 34; *see also* AC ¶ 98 (alleging that CW6 was "fired *or laid off* in May 2023) (emphasis added); AC ¶ 106 (alleging that two high-ranking employees were "let go *or* fired") (emphasis added).

*Second*, Defendants' alleged evasion of analyst questions cannot be contorted to support an inference of fraud. *See* Opp. at 32-33. Agenus was under no obligation to offer investors a prediction about the FDA's Accelerated Approval process or to divulge its clinical trial data, and its carefulness in avoiding overpromising anything to investors is the opposite of securities fraud. *See Macquarie Infra. Corp. v. Moab Partners*, 601 U.S. 257, 264 (2024) (providing that §10b-5(b) does "not create an affirmative duty to disclose any and all material information"). And the fact that several analysts throughout the Class Period asked whether "trials showed sufficient overall survival rates," Opp. at 33, suggests that investors understood it was highly uncertain whether Agenus would obtain Accelerated Approval for BOT/BAL. *Third*, signatures affixed to Sarbanes-Oxley certifications in various SEC filings, without more (as is the case here), cannot give rise to

-14-

a strong inference of scienter. *See Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 614-15 (S.D.N.Y. 2015) ("[P]laintiff cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements.") (citation omitted).

Plaintiff's motive theory is also nonsensical. Plaintiff's suggestion that Agenus's survival was on the line is conclusory and not supported by the AC's allegations. While Plaintiff's opposition notes that Agenus's cash on hand had decreased over time, Plaintiff does not and cannot allege that the $76 million of cash on hand at the end of 2023 a "was insufficient for continued operations, much less that [the Company] would shutter its doors unless it padded earnings by deceiving investors." *Sarepta Therapeutics*, 868 F.3d at 42. And the fact that Defendant Armen elected to receive his compensation during most of the Class Period in company stock (rather than in cash), combined with the fact that the AC contains no allegation that any of the Defendants sold shares during the Class Period, wholly undermines Plaintiff's allegations of scienter. Finally, the Company's at-the-market offerings ("ATM Offerings") do not change the calculus, as they reflect nothing more than the predictable reactions of hopeful and savvy executives: they "would be motivated to raise capital, make a profit, avoid bankruptcy, or finance the successful launch of a promising product." *Homology Meds.*, 2024 WL 1436025, at *18. Plaintiff's acknowledgment that the ATM Offerings were designed *to support the development of BOT/BAL through future Phase 2 trials* eviscerates the notion that they did not believe their own optimistic opinions about its potential.

Ultimately, Plaintiff's scienter theories amount to asserting "the fact that something turned out badly must mean defendant knew earlier that it would turn out badly," which is the

impermissible "classic fraud by hindsight case."[12] *Miss. Pub. Emps. Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008).

## B. Inferences of Non-Culpable Intent Far Outweigh Plaintiff's Implausible Theory of Scienter.

Dismissal is also required because no "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 80-81 (1st Cir. 2016) (quoting *Tellabs*, 551 U.S. at 324). Plaintiff completely fails to address the fact that the more cogent and compelling inference is that "Defendants, having full faith in BOT/BAL's potential, communicated optimism about the clinical data available to them at the time, all the while realizing—and disclosing—that Accelerated Approval was not guaranteed." Mot. at 38. When viewed holistically, it is clear that the non-culpable inference is the most compelling inference to be drawn from the AC's allegations. The Defendants are not alleged to have sold stock, Defendant Armen received his compensation in stock, the Company is alleged to have focused its resources on the development of BOT/BAL and on the employees who believed in BOT/BAL, the Company is alleged to have raised capital to pursue that development plan, and the Company is alleged to have acted on its development plan by obtaining Fast Track Approval and seeking meetings with the FDA about potential Accelerated Approval. These are the actions of individuals who were "all in" on BOT/BAL and genuinely believed in its future prospects, not the actions of individuals who did not believe in their own optimism about a life-saving treatment.

---

[12] For the same reasons, the AC fails to plead corporate scienter. First Circuit law is clear that "the scienter of corporate entities is ascertained through the mental state of their management." *Isham v. Pernini Corp.*, 665 F. Supp. 2d 28, 36 (D. Mass. 2009) (cleaned up). Because the AC fails to allege a strong and cogent inference of scienter for any of the Individual Defendants, there is no scienter to be imputed to Agenus.

Thus, balancing the "plausible, nonculpable explanations for the defendant's conduct" against Plaintiff's conclusory allegations that the Defendants "must have known" their statements were misleading, the Court must dismiss the AC as it comes well short of pleading a strong and cogent inference of scienter. *See Tellabs, Inc.*, 551 U.S. at 310.

## III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION.

Consistent with, and derivative of, Plaintiff's failure to allege any material false or misleading statements, so too Plaintiff fails to allege loss causation.

To begin, Plaintiff flatly misstates the nature of the event that Plaintiff cites as the basis for loss causation. The FDA did not "den[y]" Accelerated Approval in July 2024. *See* Opp. at 39. Rather, Agenus disclosed that the "FDA advised against submission of [Agenus's Phase 2 Interim Data for BOT/BAL] in support of an Accelerated Approval [sic] based on their view that objective response rates may not translate to survival benefit." Ex. 14 to Mot. (July 18, 2024 Press Release); *see also* AC ¶ 198. In other words, Agenus disclosed that the FDA had determined—based on the FDA's independent assessment—that it was uncertain whether Agenus's surrogate endpoint—objective response rate—would translate into a clinical benefit, namely survival.

Critically, this disclosure neither revealed a pertinent truth that Defendants had allegedly concealed through false or misleading statements, nor reflected the materialization of a risk that Defendants' alleged misrepresentations had supposedly concealed. *See, e.g.*, *Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 70 (D. Mass. 2022) (dismissing Section 10(b) claim when defendants' disclosure "did not correct some untruth" about prior public statements). Plaintiff is unable to point to a single statement in which a Defendant represented that Agenus had sufficient data to obtain Accelerated Approval such that this alleged "corrective disclosure" could have "revealed" some previously undisclosed truth, as Plaintiff alleges. *See* AC ¶¶ 27, 198.

-17-

The July 2024 disclosure also did not call into question the accuracy of Agenus's disclosures about the results from its BOT/BAL studies. Plaintiff unconvincingly tries to argue that somehow the July 2024 disclosure contradicted Defendants' earlier statements describing BOT/BAL clinical trial results, but the July 2024 disclosure does not undermine those statements in any way. For example, the fact that the FDA advised against Accelerated Approval in July 2024 says nothing about the accuracy of whether Agenus expected to observe "an improving response rate" in November 2023, or whether the "durability and maturity of the data is stronger today than it's ever before [sic]" in May 2024. *See* Opp. at 40. Data can improve but ultimately still not satisfy the FDA—those two concepts are far from mutually exclusive.

Plaintiff's failure to allege a claim in this regard is even more conspicuous as to his allegation that the Defendants supposedly misrepresented Agenus's ability to produce drug candidates on shortened timelines. *See* Opp. at 26, 38-39. The July 2024 disclosure included absolutely *no information whatsoever* that could somehow be construed as revealing a concealed truth or risk about Agenus's drug development capabilities, and Plaintiff does not even attempt to argue otherwise.[13] *In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 350 (D. Mass. 2020) (holding that loss causation was not established where the alleged corrective disclosure was not "connected to a prior false or misleading statement").

---

[13] For all the reasons set forth in the Motion, Plaintiff also fails to allege any actionable misstatements about Agenus's ability to accelerate drug development. *See* Mot. at 29-33. While Plaintiff (again) identifies some supposed dissenting views and apparent frustrations by former employees, none of the CW allegations plead with particularity how any of the Defendants' statements were false or misleading (much less that any false or misleading statements have somehow been "corrected" and, in turn, have caused Plaintiff a loss). At most, the allegations suggest that Defendant Armen pushed his staff to advance BOT/BAL as fast as possible because Defendant Armen believed in its promise and that Agenus did not always pay all vendors promptly. These allegations are insufficient to establish that Agenus's opinion statements about its confidence in its development capabilities were false or misleading. Plaintiff's claims based on those alleged statements must therefore be dismissed, including the statements in Agenus's SEC filings attributed to Defendant Klaskin in the AC.  *See* AC ¶¶ 182-83, 193, 195-97.

## IV.    THE COURT CAN TAKE JUDICIAL NOTICE OF DEFENDANTS' EXHIBITS.

Plaintiff takes issue with certain exhibits attached to Defendants' Motion. *See* Opp. at 13-14. In particular, according to Plaintiff, the subject matter and authored dates of these materials should prompt the Court to decline to exercise discretionary review. *See id.* Plaintiff's arguments should be rejected.

*First*, Defendants submitted various FDA draft and official guidance that address Accelerated Approval, the FDA approval process that is at the heart of Plaintiff's allegations. *See* Exs. 5-7, 10 to Mot. These are materials the Court can take judicial notice of because the facts are "not subject to reasonable dispute." *See* Fed. R. Evid. 201(b); *see also Homology Meds.*, 2024 WL 1546025, at *2 (taking judicial notice of "relevant FDA documents" despite no reference in the amended complaint); *Kader v. Sarepta Therapeutics*, No. 1:14-cv-14318, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) (taking judicial notice of "official statement of FDA"); *Ratner v. OvaScience, Inc.*, 134 F. Supp. 3d 621, 632 n.12 (D. Mass. 2015) (granting request for judicial notice of FDA guidance issued over a decade before the class period). To wit, the exhibits provide that they either will or do "represent the FDA's current thinking" on pertinent issues related to Accelerated Approval. *See* Ex. 5 to Mot. at 6 (U.S. Food & Drug Admin., Demonstrating Substantial Evidence of Effectiveness for Human Drug and Biological Products: Draft Guidance for Industry at 14–15 (Dec. 2019)); Ex. 6 to Mot. at 4 (Expedited Program for Serious Conditions – Accelerated Approval of Drugs and Biologics: Draft Guidance for Industry (Dec. 2024)); Ex. 7 to Mot. at 4 (U.S. Food & Drug Admin., Clinical Trial Considerations to Support Accelerated Approval of Oncology Therapeutics: Draft Guidance for Industry (Mar. 2023)); Ex. 10 to Mot. at 4 (U.S. Food & Admin., Guidance for Industry Expedited Programs for Serious Conditions – Drugs and Biologics (May 2014)).

-19-

*Second*, Defendants submitted an article from a peer-reviewed medical journal that provides background on the critical need for new treatments for colorectal cancer involving microsatellite stable tumors (which fact Plaintiff does not contest). *See* Ex. 2 to Mot.; Opp. at 13. Because this fact is also "not subject to reasonable dispute," the Court may take judicial notice of it. *See Gent v. CUNA Mut. Ins. Soc.*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (citing Fed. R. Evid. 201).

*Third*, and finally, the materials provided by the Defendants at Exhibits 15 and 16 provide important context for the Plaintiff's allegations about the nature of Agenus's July 2024 press release, which Plaintiff alleges was a "Denial Announcement" as to Agenus's pursuit of Accelerated Approval. *See* AC ¶ 129. While the materials at Exhibits 15 and 16 post-date the class period, they are relevant to the claims at issue because they underscore how Plaintiff mischaracterizes the July 2024 press release by reflecting that Agenus's pursuit of Accelerated Approval continues.

## V.    THE OPPOSITION'S REQUEST FOR LEAVE TO AMEND THE AMENDED COMPLAINT SHOULD BE DENIED.

The Court should deny Plaintiff's request for leave to amend.  Plaintiff was "put on notice of the deficiencies in the complaint by the motion to dismiss" and if Plaintiff "had something relevant to add, they should have moved to add it" rather than simply make the request in their opposition. *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (declining to allow leave to amend after district court granted motion to dismiss); *see also State Tchrs. Ret. Sys. of Oh. v. Charles River Lab'ys Int'l, Inc.*, No. 23-cv-11132-DJC, 2024 WL 3258293, at *17 (D. Mass. July 1, 2024) (collecting cases); *Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 472 (D. Mass. 2016).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

-20-

Dated:  July 7, 2025

Respectfully submitted,

*/s/ Daniel V. McCaughey*
Daniel V. McCaughey
(BBO #662037)
James R. Drabick
(BBO #667460)
**ROPES & GRAY LLP**
Prudential Tower, 800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
Daniel.McCaughey@ropesgray.com
James.Drabick@ropesgray.com

Chimso O. Okoji (*pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
Chimso.Okoji@ropesgray.com

Anne E. Conroy (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
Fax: (212) 596-9090
Anne.Conroy@ropesgray.com

*Counsel for Defendants Agenus Inc., Garo
H. Armen, Christine M. Klaskin, Steven J.
O'Day, and Todd Yancey*

-21-

-22-

**CERTIFICATE OF SERVICE**

I, Daniel V. McCaughey, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Daniel V. McCaughey*
Daniel V. McCaughey